May it please the Court, my name is Parth Keji and I represent the Appellant Justin Shawler. The central issue in this appeal is whether the District Court erred when it decided as a matter of law that the Big Valley was not a small passenger vessel, which is a type of inspected vessel, but rather decided that it was an uninspected vessel. On March 15, 2016, the District Court made that ruling because it decided that there was no passenger for hire on the vessel. It based this ruling on a misreading of the statutory definition of the word consideration, which is a prerequisite to finding a passenger for hire. This error was harmful. Consideration was... So can I ask you on the consideration point, your argument zeroes in on the fact that the company paid for the wages and not only the food and fuel or whatever we're talking about. So that's it, right? It's the wages. Your Honor, I think the point is a little bit broader than that. The point is that there is consideration because consideration is defined in the first part of the statutory section as economic benefit inducement right or profit. And so the first argument is that that is present here. And the second argument is that exemption doesn't apply. And the most salient way of making that point is to say that crew member wages is not in one of the exemption examples. So the point is it really turns on consideration is present because of the economic benefit. I want to be clear that there's no evidence that anything above the actual expense of that was paid. Is that fair? Your Honor, that's completely... So it was a net-net. And so we have to decide whether a net-net is the consideration that's being discussed in this statute or not. That's exactly right, Your Honor. And in response, what I would point out is Congress chose to use four words when it used the words benefit, inducement, right, or profit. We've never argued that Big Valley somehow received a profit out of the transaction, but we have reimbursement of these costs. But how is that a benefit if it's a net-net? I mean, if I didn't take the boat out that night, I wouldn't have to pay fuel and wages. But because I'm taking the boat out, I pay fuel and wages and you reimburse that. How is that a benefit? I just didn't have a detriment. I didn't lose money, but I didn't gain money. Right, but benefit has to mean something besides a profit. And if we're using the kind of net-net understanding of benefit, then essentially we're reading benefit to mean profit. We read benefit to mean... Well, no, because I could charge more and still not yield a profit because I have to pay for overhead and I have to pay for the other expenses of running this shipping company. So I think that would be a benefit in that I'm offsetting overhead, but it wouldn't be a profit because I don't put money in my pocket because I still have these other expenses. So it's kind of the variable versus fixed expense sort of accounting analysis. I understand the point, Your Honor, but I think in that case what you have to do is really look at the exemption and the wording of the exemption, which says voluntary sharing of actual expenses of the voyage. And so the benefit is you're getting these expenses paid back, such as crew member wages, and it's not a voluntary sharing of the actual expenses of the voyage. Why is the crew member wage not an actual expense of the voyage? Because, Your Honor, Congress decided to give us examples of what it considers a voluntary sharing. For example, fuel, food, other supplies. It didn't use the word wages or anything like that. And by using the word other supplies, it's essentially indicating this exemption is for the situation where you go out on a Sunday afternoon with your friend on a boat and you're voluntarily sharing actual expenses, not a situation where, as here, Ergon, which is the sister company that used to use the Big Valley, had to pay back Big Valley, which owned the vessel. Your Honor, I'd also point out that in considering whether there's consideration or not, we cited on page 12 of our brief some testimony from the record. And what's important here is, according to the testimony, Big Valley used to invoice bills to its sister companies. And I think that's important because it shows that this was not a voluntary sharing of the expenses as well. The district court essentially made two errors in this regard that I think are worth highlighting in our brief. The first is what we've just talked about, which is it considered this not a profit or a benefit and kind of confused the two words. The other is that it somehow confused the point of view in terms of assessing who gets the consideration. What's important in the statutory language is that consideration has to be paid to someone, but it doesn't have to come from anyone. It can come from anyone in the world. So the district court essentially thought that since Mr. Schaller did not pay the consideration, there is no consideration here. But as the evidence clearly demonstrates, Big Valley was paid by Ergon, which is the sister company. Okay, so if we were to agree with you on the statute, then the question would get down to causation. And I know you have an argument that it's not your burden to prove causation, it's their burden to disprove it. But let's assume you're at trial and you're making your closing argument on causation. Can you walk me through how Captain Griffin's drinking 2, 3, 4 beers, whatever it was, caused Mr. Schaller's fall? Sure, Your Honor. First, I think the big difference that having the Coast Guard regulation makes is that there's a credibility factor that comes into play, which is essentially a plaintiff's counsel gets to stand up during closing argument and basically say they violated a Coast Guard regulation, and that meant that they were not concentrating on their duties. Now the evidence at trial showed that one of the duties that the crew members thought themselves to have is if they saw someone who was intoxicated, they'd usually take that person and put them inside the cabin. And so the causation link is strengthened because now you can point to a regulation and say they're violating the regulation. The regulation is in place so that crew members may concentrate on their duties, and the causal inference is stronger that they weren't looking out for intoxicated passengers. Okay, but I mean, if you look at Captain Griffin's testimony, a lot of it was he should have had these policies in place that you can't climb ladders while the ship is moving, and these policies would have been put in place not that day when he's already drinking the beers, but at some point in advance. So that doesn't have anything to do with the beers. He wasn't there when Mr. Schaller climbed the ladder and climbed back down. He was running the ship. So what is it that he was supposed to do that he didn't do because he was drinking? Not because he's just not a good captain, but because he was drinking, he did something different than he otherwise would have done, and that caused Mr. Schaller's fall. Well, Your Honor, I think you have to step back and look at the sequence of events, which is essentially the captain is in the bridge with another passenger. Mr. Schaller comes in with four beers, asks if he can go upstairs, and the captain lets him go upstairs. And I think the causal link that you're looking for, really, is if the plaintiff's attorney had been able to point to a Coast Guard violation, they would have been able to say, had he been concentrating on the duties, he would have ensured that someone who had four beers and was clearly intoxicated shouldn't have been going up and down and should have been put in the car. That's your negligence argument, period. I mean, that's the argument you all already have made and illicit testimony on. To me, what I'm trying to figure out is how Griffin's consumption of alcohol changed anything, because actually the evidence you all brought out at trial suggested Griffin's just kind of lax and doesn't have any rules and lets people climb up and down ladders having nothing to do with whether Griffin was drinking or not. So that's what I'm trying to get to. Negligence, per se, gets you past whether a reasonable person, reasonably prudent person under the same circumstances would act this way, but it doesn't get you causation. Again, I understand you have a burden of proof issue, but you still at some point are going to make some argument about causation, and I'm still struggling a little bit with what it is vis-a-vis the drinking of the captain. And Your Honor, I understand your point, and I think there would be two responses. The first response would be the causal link would be stronger had we been able to say that because the captain was having a beer or two, he was not following this Coast Guard regulation. And that, in turn, means that he was not concentrating on his other duties, which is making sure that intoxicated passengers are sitting inside the cabin instead of climbing up to the tuna tower. And so I think the causal link is stronger there. The second point would be that we do think the Pennsylvania rule applies, and so the causation burden would have shifted onto the defendant, and the defendant wouldn't just have had to prove that the violation of the Coast Guard regulation probably would not have led to the injury, but definitely could not have led to the injury. And that's a pretty high bar. The other harm... Was there any evidence that Griffin was actually intoxicated? I mean, I don't agree with the captain drinking while they're doing shifts. Don't misunderstand me. But was there any evidence that the captain was actually intoxicated as opposed to having had a couple of beers? Your Honor, this was briefed at the district court level. Essentially, the evidence that the jury could have used to find intoxication had it done so would have been the testimony about having one or two beers. There's not much else in the record as to Captain Griffin's drinking. Now, there is evidence that one of the other crew members might have had something like four or five beers every time they celebrated getting a big catch, but that was the evidence of alcohol consumption at the trial. When we're looking at whether, pardon me, whether your client can be viewed as a passenger for hire, okay, so we're looking at consideration, which one is more legally helpful for you? Which one matters more? Is it the compensation that Big Valley paid to the crew, or is it the payment that Ergon made to Big Valley, or a combination? Your Honor, definitely the payment that Ergon made to Big Valley. And if it's helpful, I've submitted a bench exhibit for you, and tab four is the statutory definitions at issue. And that's true, even if Big Valley received no sort of financial gain, it was just a simple reimbursement. Your Honor, that is exactly our point. The two definitions that help us the most are the definition of consideration. And here, you can see that the economic benefit inducement right or profit, including pecuniary payment, has to accrue to an individual person or entity. The entity here would be Big Valley. And so the transaction at issue would be the economic benefit flowing from Ergon to Big Valley, and not the economic benefit flowing from crew members. But your argument rests on us construing the bimonetary contribution or donation of fuel, food, beverage, or other supplies, that the fuel, food, beverage, or other supplies modifies expenses and limits it to that. That's what it rests on. If we were to conclude that no, by saying monetary contribution, you could, you know, capture the wages, or somebody could just show up with a big bag of fuel or food and make it that way as a barter, that it's an either-or, that would defeat that argument. Your Honor, I think that is part of our argument. And what is the other part? I think our argument is a little bit broader, because we also argued the first part of consideration, which was, you know, there's economic benefit flowing from Ergon to Big Valley. So I think you would have to do, you know, analysis of the entire definition. But even if there was a benefit, if it was a voluntary sharing of expenses doubly due, then that would outweigh that. So if the captain wanted to take the ship out that day, and I bring a big bucket of fuel, that would still be a, that would be under your definition of a sharing of the expenses, because I brought the fuel, even though the captain benefits in his head because he gets to go out and do it, or whatever. Or Big Valley likes to use their ships, or whatever their benefit is. Your Honor, I'm happy to concede that hypothetical. The problem with that hypothetical is the way you worded it, which is you said, if you decide to take your boat out, and I decide to bring a big bucket of, you know, fuel. But in the case at hand, what happened is that Ergon had to reimburse Big Valley. In fact, there's an invoice that's in the record. There's testimony in the record that, you know, to make arrangements to use the Big Valley, you know, the sister companies had to call in advance, and then afterwards had to reimburse them. So I think the hypothetical is exactly correct. It just doesn't match the facts of this case. Turning next, to the next page, passenger for hire, I think this definition is also favorable to us. And Your Honor, I'm happy to answer more questions on the consideration and the statutory definition issues, but if you had any questions about the preservation or case management issues, I'm happy to address those also. I see that I'm running out of my time. Okay. Well, in that case, I'll reserve the rest of my time for a moment. Okay. All right. Thank you. May it please the Court, Jeff Tillery on behalf of Big Valley, Inc. I will address, if the Court would indulge me, the question of consideration and causation toward the end, because Your Honors, I don't think you ever have to get to whether it was a passenger for hire. I don't think you ever have to get to the question of causation, because in this case, the plaintiffs failed to follow Judge Afric's direct order and failed to preserve the evidence for appeal. In this case, it was about personal responsibility. Mr. Schaller drank too much on my client's boat. He had a .26 in alcohol level. The jury eyeballed Mr. Schaller. The jury eyeballed Captain Larry Griffin. They ruled in favor after a four-day jury trial. I'm a little But the jury ruled after a four-day jury trial in favor of us and Captain Larry. One of the primary policy reasons to require... This has more sizzle on this boat and party boat than 100,000 pages of government papers. We understand. And Judge, Captain Larry was not the daddy of Mr. Schaller. Oh, my. Okay. I think we should stick to the facts of this case. But what is important, Judge, the policy reason behind requiring evidence to be preserved, objections to made contemporaneously, one of them is witnesses' memories tend to fade, evidence tends to be spoiled, evidence goes away. So you'd have to retry a case four years later. Yeah, but you have the problem that the judge did rule. And after that, kept talking about unexpected vessels. And I have certainly had my fair share of lawyers come in and keep making the same darn objection and argument every single time they see me in the case. And I respect that. When I was a trial judge, I respected that. But it was like, for the fifth time, no. And so we have said, we've kind of relieved trial judges and lawyers of the burden of continually hearing the same objection and argument once the judge rules. Unless the judge indicates, I'm vacating that ruling or I want to reconsider it. But here, every time the judge thereafter asked for a waiver, I start over with what consideration means. Fair. And I'm going to address those four reasons. There's four reasons I'd like to address that, Judge. But just to finish my last sentence, in this case, Your Honor, Captain O'Leary is dead. He died of unrelated causes after the briefs were filed in this case. Now, my opponents know this. We've told them about it. And they know we're going to explain this to the court because it was all after the briefs. So it goes to the whole policy argument, I think, on the waiver. And that was my point in bringing that up here today. To address your question directly, in this case, in May, at the pretrial conference, after the pretrial conference, Judge Afric issued a direct order. And he said directly as follows. Mr. Schaller, you tell me what regulations you think apply to uninspected vessels. So you're right, Judge Haynes, to uninspected vessels. And you tell me why they are relevant to this case. Two very important points. Tell me regulations on uninspected vessels, why they're relevant. This is what he does. This is what my opponent does. He comes in and lists several body of regulations. He doesn't talk about the specific regulations. He lists 3395.001 et sec, which is a body of regulations. There's 11 regulations underneath that. 46 CFR et sec is a body of regulations underneath that. He doesn't talk about the specific regulation at all. We're not on notice of it. Trial's approaching two weeks later. 95.045 AC, the one they're talking about here, is for inspected vessels. They never thought it was a definitive ruling, Judge. When they listed this particular statute, they went back to inspected vessels after the judge's order. So they didn't follow his order there. Big time important point. They also did not explain the relevancy of those regulations. They talked about inspected regulation. They didn't talk about the specific one. They never told Judge Afric the relevancy of it. That was so I could defend it and defend where I was going with it, Your Honor. Thirdly, it is not, this new regulation, 3595, had never been mentioned before, ever, in the trial court. Judge Afric says, it's not an expert report. You violated Federal Rule of Procedure 26. Judge Afric says, these people can't defend against this. It should have been in an expert report. And that's what Judge Afric ruled. He ruled, you didn't follow my court order to specifically identify the regulation and to explain its relevancy. But we always say experts aren't supposed to tell us the law. So the law is what it is with our regard to whether an expert testifies about it. If this statute applies about the not drinking, we know he drank. So we don't need an expert to tell us that. So what difference does the expert make to that point? It has to be relevant to the claims in this lawsuit. Yeah, but relevance is also a question for the court. So if, in fact, this was a small passenger vessel, then this regulation applies and the captain violated it. I don't know what an expert would tell us about any of that. The expert would tell you how the regulation applies in this situation. That presupposes that the regulation does apply in this situation. Judge Afric says, tell me why it applies to this situation. And he didn't do that. And I couldn't defend against it. Experts are permitted to testify about regulations, Your Honor, and to explain their relevance and how they came about and how they fit into a particular situation. And all Judge Afric was saying is, and I was at the pretrial conference. He was mad at everybody. And he gave specific orders. And we know you've got to follow Judge Afric's orders. And it simply wasn't done to the point where I could defend against it at trial. And that's how Judge Afric ruled. I think it's an abuse of discretion standard is my point. It's an abuse of discretion standard. You'd have to find that Judge Afric abused his discretion. Okay, let's suppose that we were to find it preserved. What is your answer to the point that because the company was invoiced for Big Valley's expenses, it's not a voluntary sharing of actual expenses? Great question. I'll give you two answers to that. The carve-out for consideration says as directly as follows. Consideration is not voluntary sharing of expenses of a voyage by monetary contribution or, as you pointed out earlier, donation of food, fuel, beverage, or other supplies. In this particular case, the word or is really important because as you pointed out earlier, Your Honor, donation, I mean, food, fuel, beverage, and other supplies modifies donation. It doesn't modify voluntary sharing. Okay, but what about the word voluntary? They're claiming, I guess, that it was involuntary because there was an invoice as opposed to me showing up with a big bucket of fuel or whatever the right term is, a tank of fuel. I was sent an invoice for the tank of fuel. Explain that and explain how that is or is not voluntary. I don't know that there's any definition of invoice in this world that says if I give you an invoice for something that we've agreed is a voluntary contribution, maybe it was for book purposes. I don't know. I don't know the direct answer to that question, Judge. It wasn't an invoice, per se, for services rendered, and it was one word as of one witness in the deposition. The word invoice was where you invoiced was thrown out there. I don't know that anybody got into the nitty-gritty on it. Well, what evidence do we have that it was voluntary versus involuntary? AirGone's a family business owned by three brothers. They have a bunch of affiliate companies. This particular boat, the Big Valley, is used by the family for the most part, except if AirGone wants to take customers out on it, they let the Big Valley go out with the customers. And AirGone reimburses them for the wages, for the actual expenses of the boat. Do they have to give them maybe an invoice or a document to show his wages were $1 an hour or $10 an hour? Sure. That's probably what it was. I wish I had a direct answer for you, but that's probably what it was. Well, what would be an involuntary sharing of expenses under your definition? An involuntary sharing of expenses. I'm just trying to understand involuntary versus voluntary. Involuntary sharing of expenses. I don't know that you could have such a thing. An involuntary sharing. We're sharing expenses. We agree to share the expenses. Involuntary sharing of expenses is if Your Honor ordered me to share expenses with my partner. I guess that would be an involuntary sharing of expenses. But in this case, there was no court order. There was no contractual arrangement where they had to share the expenses. Important also, Your Honor, in our brief, the United States Coast Guard interpreted this exact section and the agency interpretations of this particular statute should be given great deference as we put in our brief. This is what the Coast Guard says about this exact issue. Employees or business clients that have not contributed for their carriage and are carried for business and entertainment purposes is not included in the exchange of consideration. That's in our brief. That's how the Coast Guard of the United States interprets this. I'm not saying they're perfect, but you should give deference to them. I would submit in this particular case. So... Do you agree that if we were to reverse and send back for trial that you would have the burden of proving no way, no how, did this cause harm? No, absolutely not. And that's a real important question. The negligence, first of all, negligence per se, never mentioned, ever, until after this trial. In the trial record. 35 U.S.C. 95.045 A and C that are mentioned. Never mentioned in the trial court. Ever. How do I defend against that? How could I possibly defend? All that's raised after the point. Wasn't it pled? Only in the complaint. Well, that's kind of an important mention. Only in the complaint. Not in the trial record of this case. Not in the pretrial orders. Not in the jury charges. Not in any motion. Not in any expert report. Nowhere along the way. Which is why they abandoned it. But it doesn't matter if they didn't abandon it. Because what they would like to have you believe is that the negligence per se shifts the burden of proof. And I get it. I get the argument. It does in collision, maritime collision cases. Because in a maritime collision case, which is the only case they cite in their brief, in maritime collision cases, the violation of a rule of the road, which is a navigational rule, naturally and common sense leads to the fact that there's causation. So the burden shifts. In the Fifth Circuit, the Mathern case, I think the Mathern case is in our brief, holds that it doesn't shift the burden of proof in personal injury cases. The plaintiff has to prove that the injury itself, I mean, the plaintiff has to prove that he was within the class of persons, he was within the class of persons that the statute was designed to protect. And the plaintiff has to prove that the injury he sustained naturally flowed from the violation of the statute. The Fifth Circuit does not switch the burden of proof in Mathern under the negligence per se standard in personal injury cases under the general maritime law. There is one case that does it in the Fifth Circuit called Rees, R-E-Y-E-S, in a Jones Act case. And, Your Honor, that's a Jones Act case which is a semen against his employer, and it deals with... that is a different burden of proof. That's the featherweight burden of proof that we have under maritime law. So in this case, the plaintiff... Not only does the burden of proof shifting really not matter for evidence purposes. Your Honor, we've cited the record completely in our brief. The overwhelming evidence in this case was that two or three beers by Larry Griffin had nothing to do with this accident. Every single witness who observed him, including Mr. Shaw, every single witness said he did not operate the boat erratically, that the boat slowed, that he was not drunk, he did not appear to be drunk, he did not appear to act erratically, he did not appear to act like drunk people act. Well, neither did Mr. Schaller, apparently, because he let him climb up this ladder and all this stuff when he had .25 or something, blood alcohol, I mean, something ridiculous. And the overwhelming evidence is he told Mr. Schaller, you can go up to that tower, okay, but Mr. Schaller, don't come down until this vessel gets back on the dock. But then he says in his testimony, which makes sense to me, he didn't violate any order of mine because by the time he fell, he was coming down not from the tower, but from floor 2 to floor 1, for better. And, Your Honor, that drives right to my point. You know who gets to make that decision? The jury, and the jury made the decision eyeballing both Mr. Schaller and Mr. Captain Griffin. Yeah, but Captain Griffin's the one who said he wasn't violating my orders by what he did. That's his testimony, and I read it again this morning to be sure I wasn't confused. Didn't he also say that I told him, I don't know whether he said something else, too. He said, I told him to go up there and not come down, but then he said, yes, but the lawyer said by the time he was coming from floor 2 to floor 1, I don't remember the technical term for that, he was down from the tower. And so, Captain, he wasn't violating any order of yours, was he? No, he wasn't. Fair. So then that... I agree with you. Okay. If he said that, he said that, and the jury also heard the words, I told him to stay up there. And the jury chose to believe he should have stayed up there. I guess that's all I can say to that. In other words, he didn't violate my hard order, don't you move, but, Judge, he said, don't come down. So I'm with you, and I understand the question. Did he say... Do witnesses say different things in the context of testimony? Sure. And the jury listens to the whole context, the jury listens to the whole testimony and makes its decision. And in this case, talk about causation just one more minute. After the accident, after the accident, Captain Griffin hustles Mr. Schaller to the United States Coast Guard station, where Captain Griffin is interviewed for an hour period of time by the Coast Guard and officers. Don't you think if they thought he was inebriated, they would have done something? A few minutes later, he's interviewed in detail by the Department of Wildlife and Fisheries investigating officer for half an hour. They don't think he's drunk, they don't do anything. A few minutes later, he's interviewed by the police, the Buras police, where he was, about the accident. They don't think that he's drunk and do anything. Point being is zero... I think the argument on causation has to be, although your counsel officer didn't make it quite this way, that while he wasn't drunk in the sense of stumbling and making the ship go off course and that kind of thing, it affected his judgment to the point that his own judgment was impaired to perceive that Schaller's drunk. That, I think, is the argument that he was diminished, not to the point of being drunk and falling down or whatever, but to the point that his own judgment, that very high level of judgment that you need to perceive someone else is drunk and to look out for someone else on your ship, was impaired. I think that's the argument, although I asked the question and didn't get that answer, but that's what I think. I'm going to give you... I think I can answer that. If there were evidence in the record of that, there's just zero evidence of that. There's zero evidence that he was impaired at all. I mean, that his judgment was lax at all. Matter of fact, the overwhelming evidence is that his judgment was good, that he did everything right, that he was not drunk. And I do not... And I would implore the court to please look at the end of our brief where we discuss the negligence, per se, and the burden shifting, because I think that, at the end of the day, the Fifth Circuit's made it clear that an injury... General Maritime Law cases now need to be distinguished between the Jones Act case, because there is a Jones Act case out there where they shift the burden, okay? But the Mathurin case, 1981 case, that we cite in the last part of our brief, is right on point on that, and the cases they cite in their brief are not. I would submit to the court one other point, since I have a couple minutes. I understand the Ultra Flow case that is cited in their reply brief. An Ultra Flow case, they argue, is this case, and so they didn't waive, they preserved their right for appeal. But I would ask you, Your Honors, to look at Ultra Flow carefully, because Ultra Flow did not involve an evidentiary ruling by Judge Affrick. It involved a 12B6 dismissal of claims fully and completely briefed by the parties, and that's why the Ultra Flow Fifth Circuit said that it's still part of the live pleading. The state law claims were still part of the live pleadings, or were no longer part of the live pleadings in the case. It's totally different than ruling on evidence. The definitive ruling argument that they make is an evidentiary rule, 104B, it's an evidentiary rule. In this case, so huge to me, is never, in three pretrial orders, okay, three pretrial orders are filed. Two of the pretrial orders before Judge Affrick issues his ruling on June 6th. Negligence per se is not mentioned. This regulation is not mentioned. The third pretrial order afterwards, it's still not mentioned, ever, anywhere. Lastly, Rule 51 of the Federal Rules of Procedure said if you want to object, you've got to come, or you want to submit a jury charge of negligence per se, you've got to give me the jury charge, and tell me what it is and why. The judge then has to rule on the record in open court during the trial and explain why he's not even going to give the charge and we have to object to the jury charge on the record, and there's a reason for that rule. The reason for that rule and the reason it's not tied into definitive ruling under 104B and the definitive ruling cases is so that the district judge can get a chance to correct any errors that he may have made previously. In this particular case, before Judge Affrick even rules in June, before he rules on June 6th, the plaintiff submits jury charges, jury verdict form, jury interlocutors, never asks for negligence per se, never asks for this statute or any statutes, and finally, they argue negligence per se, and I get it, the argument, I understand why they want it, but if they had wanted to argue negligence per se, Mr. Kasky, in his expert report that's in the record of this case, their expert, talks about us allegedly violating uninspected regulations, uninspected regulations, 46 I think is what he cites. Judge Affrick never took that away, never. So why didn't the plaintiff, if he was going to argue negligence per se, argue the uninspected statute, negligence per se, your burden shifts. I would then have had a chance to defend against it, and now I am hamstrung. If you reverse it, Your Honors, I've got to try it without a cap, without evidence, which goes back to the policy. Arguments. So, unless you have more questions, I only have 8 seconds. All right. Thank you. Thank you, counsel, for your argument and answers to questions. Back to you, Mr. Keji, on your button. I'd like to begin with the preservation issue and really give the court assurance that this issue has been preserved, and I think the bench exhibit will help with that, because I can point to 10 sentences from the record that demonstrate preservation. If you look at tab 1, this is the March 15th order that the district court just signed in which he decided that the vessel was an uninspected vessel and as a matter of law was not a small passenger vessel, and decided that since it was not an inspected vessel, any regulations related to inspected vessels were not applicable. This is the order that we're appealing. This is a pure question of law ruling. If you look at tab 2, this is the invitation from the district court in May of 2016 to brief up any regulations related to uninspected vessels and it clearly is asking the plaintiff to talk about any uninspected vessel regulations that are applicable. And then if you look at tab 3, this is the June order and there are two sentences that are important here. First, the district court recognizes that in March 15th, 2016, it took away any regulations pertinent to inspected vessels and then the district court decides on the next page and on the last page that it was going to exclude regulations related to uninspected vessels. This is our point about the preservation issue. What we're appealing is the March 2016 ruling. After the district court made that ruling, it never reopened the door about regulations related to inspected vessels and that is why this case is exactly on all fours with UltraFlow. And the judge granted a limine on the alcohol but then ultimately allowed the jury to hear about the alcohol of the captain. You're right. You're right, Your Honor. I mean, that's in the June order that you're not to mention it but it was a limine that you need to approach first and then ultimately the jury didn't hear about that. The only thing they didn't hear is this regulation. That's right, Your Honor. The second point I want to make on this preservation issue is if you look at the Record on Appeal page 1895-1896 this is where Mr. Schaller briefs up regulations related to the uninspected vessels in response to the district court's invitation. I think it's clear that in citing the regulations he's not trying to reopen the door as it were about regulations related to inspected vessels. The second point I would like to make and Judge Haynes you were asking about this which is the causation issue you made my point better than I could but it's in our briefing as well. If you look at our brief opening brief on page 19 we cite to the defense's toxicology expert who makes the very point that you're making which is if you're consuming one or two beers your judgment is impaired and you might not be able to make the same determinations for example about if someone else is intoxicated as you would have been able to otherwise. The third point I'd like to make is you know the whole debate we are having over consideration I think that's the most forceful statutory argument we have and if you look at record on appeal 440 that is the invoice I've been citing to you as evidence that this is not a voluntary sharing of expenses. But I guess what I mean an invoice to me has no meaning unless I'm forced to pay it under some theory so I mean I could say I need something for my records would you just send me something so I'm willing to pay for the I'm willing to pay for you to drive me to the airport I'll pay your gas but can you just send me something so I have that for my records. I don't know that you sending me something means I didn't agree to do it without being forced to I guess I'm just having trouble with what involuntary is versus voluntary here because if I agree to do it that's voluntary unless I was forced to pay it under some interpretation but if you look at record on appeal page 436 to 437 I think that's the testimony that establishes that this falls into the involuntary category versus the voluntary category however the court might write the distinction in terms of defining that distinction. The third point I'd like to make is you know we talked about the rule applies the Pennsylvania rule applies and then the last point I'd like to make is you know the negligence per se theory was on our it was in our pleadings and then once the March 2016 ruling happens we're essentially foreclosed from referring to any regulations related to inspected vessels or to any negligence per se theory that are you know tagged onto those regulations. For these reasons we ask this panel to reverse and remand for a new trial. Your counsel's statement about the death that occurred later any comment on that? Judge you know I'm sympathetic it is a sad occurrence however you know we have the former testimony exception to the hearsay rule for this very reason and so you know there's a videotaped deposition and it's in the record the transcript of Captain Griffin plus Captain Griffin testified at trial so presumably the former testimony exception would apply in this situation. All right just wanted you on the record. All right thank you counsel both sides for the briefing and argument in the